## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                   )

**EDWARD RICHARDSON,**               )

                                   )      **Civil Action No. 14-1673 (RMC)**

              **Plaintiff,**         )

                                     )

      **v.**                              )

                                     )

**JANET L. YELLEN,** *et al.*,        )

                                     )

             **Defendants.**       )
_____ )

## MEMORANDUM OPINION

Edward Richardson has filed suit pro se against his former employer, the Federal Reserve Board of Governors, and seven individual Defendants for a variety of constitutional torts, common-law torts, and statutory violations that he alleges occurred during his employment with the Board as a law enforcement officer.  Defendants move to dismiss all claims except those alleging disability discrimination.  For the reasons stated below, the motion will be granted.

## I.  FACTS

The well-pleaded facts alleged in the operative complaint must be taken as true in this procedural posture.  *Baird v. Gotbaum*, 792 F.3d 166, 169 n.2 (D.C. Cir. 2015).  The Court also considers the arguments and allegations in Mr. Richardson's opposition memorandum.  *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015); *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999).

Only a summary of the pleaded facts is necessary here, as the claims at issue fail for various and purely legal reasons.  That is to say, none of Mr. Richardson's claims will be dismissed for failure to muster sufficiently plausible facts.

**A.  The Facts Alleged**

Edward Richardson was a military police officer in the United States Army. While deployed to Iraq in 2003, he was repeatedly subjected to fumes and toxins emanating from burning human waste.  While in Iraq, he was diagnosed with "severe persistent asthma/allergies," which is "a life-threatening illness."  Am. Compl. ¶¶ 6, 14.

Between June 8, 2009 and June 7, 2010, Mr. Richardson worked for the Board of Governors of the Federal Reserve System (the Board) as an officer in the Law Enforcement Unit (LEU).  Before Mr. Richardson was hired, he told the Board about his medical condition.  Four months into his job, he requested "a reasonable accommodation."  *Id.* ¶ 10.  He made a second request one month later.  *Id.* ¶ 13.  Despite these requests, he was "subjected to inclement weather, both hot and cold," and "outdoor allergens" that "exacerbated the symptoms" of his condition.  *Id.* ¶ 16.  It is alleged that at all relevant times, Defendants were aware of Mr. Richardson's requests and ignored them.

Between October 2009 (when Mr. Richardson made his first request) and June 2010 (when he was terminated) the Board allegedly refused to engage in the "interactive process" prescribed by the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (ADA). *Id.* ¶ 20.[1]  Mr. Richardson alleges that he further suffered "severe and hostile working environment and derogatory name calling," and that Defendants "failed to act when [he] reported the behavior as offensive."  *Id.* ¶¶ 21, 23.  Further, Mr. Richardson was accused of missing work without medical justification, was denied a promotion, and was denied the opportunity to work

---

[1] The term comes from the definitions section of the ADA's implementing regulations.  The full regulation reads: "To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation."  29 C.F.R. 1630.2(o)(3).

on the "hybrid shift." *Id.* ¶ 33.  Mr. Richardson was also made to work three different shifts each

week, unlike any other LEU officer, "as a form of punishment for requesting a reasonable

accommodation for [his] recorded disability." *Id.* ¶ 39.[2]

       Mr. Richardson alleges that he was subjected to "slanderous and libelous

defamation," both before and after his June 2010 termination. *E.g.*, *id.* ¶ 45.  For example,

Defendants Albert Pleasant and Billy Sauls allegedly conspired against Mr. Richardson in a "cell

phone spoofing scandal" and Mr. Sauls is alleged to have "maliciously accused [Mr. Richardson]

of vandalizing the vehicles of two Board LEU officers." *Id.* ¶¶ 47, 48.  The latter caused a

Charles County Deputy Sheriff to visit Mr. Richardson's home.

       Certain Defendants—sometimes "engag[ing] in a conspiracy"—are also alleged

to have intentionally removed medical documents from Mr. Richardson's file prior to

terminating him in June 2010. *Id.* ¶¶ 21, 24.[3]  Mr. Richardson reported this "to [Larence] Dublin

and [Marvin] Jones" and also "to [Billy] Sauls." *Id.* ¶ 29.  The harassment by Robert Bakale,

LEU Sergeant, only worsened.  For example, Mr. Bakale authorized his subordinate, Senior

---

[2] In support of his employment-discrimination claims, Mr. Richardson offers four "discriminatory comparators" in the form of other LEU officers. *See generally* Am. Compl. ¶¶ 145-77.  David Galloway claimed that medical documents were removed from his file, leaving his "call-offs" unjustified and forcing him to accept "a small severance package" and to waive his rights against the Board. *Id.* ¶ 147.  DeBora Burford was terminated because of Equal Employment Opportunity (EEO) activity, and after she was allegedly framed for the "spoofing scandal." *Id.* ¶ 151.  Sean Waye, who engaged in no EEO activity and suffered no disabilities, was given only a "short suspension" after he was found to have charged $37,000 on the Board's credit card without authorization. *Id.* ¶¶ 159, 161.  Shandra Love, who had no disability and no EEO history, was merely reassigned to administrative duties after two convictions for speeding and being charged with a hit-and-run. *Id.* ¶¶ 165-75.  Troy Granger, who had neither a disability nor prior EEO complaint, was similarly reassigned to administrative duties after being charged with driving under the influence of alcohol, reckless driving, and related crimes. *Id.* ¶¶ 174-77.

[3] At times Mr. Richardson identifies the alleged conspirators—*e.g.*, Defendants Coble and Bakale in Compl. ¶ 24 or Defendants Pleasant and Sauls in Compl. ¶ 47—and at other times he does not, *e.g. id.* ¶ 64 (accusing Mr. Bakale of conspiring "with co-Defendants").

Officer Bhatia, to call Mr. Richardson "sumo." *Id.* ¶ 30.  Defendant Kevin May is also alleged

to have removed Mr. Richardson's "Board separation letter; [his] Board separation appeal letter,

and [Mr. May's] EEO investigative affidavit" from Mr. Richardson's personnel file. *Id.* ¶ 51.

Mr. May also allegedly removed a Report of Investigation (ROI) from the Board's offices.

       Defendant Albert Pleasant, "acting under color of state law," is alleged to have

unlawfully accessed Mr. Richardson's cell phone records by using Mr. Pleasant's investigation

as a pretext. *Id.* ¶ 49.  Mr. Pleasant and others are also alleged to have "submitted false

documentation to [four] separate law enforcement agencies," which spurred a "malicious

prosecution process." *Id.* ¶ 50.

       Mr. Richardson alleges a host of "fabricated evidence" and "perjurious

testimony" by numerous individual Defendants and third parties.  *See generally id.* ¶¶ 55-144.

The Court will not further parse these allegations because, as stated below, they fail as a matter

of law.

### B.  The Amended Complaint

       Mr. Richardson's Amended Complaint contains various claims.  Count I alleges a

violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (ADA), due

to the failure to accommodate Mr. Richardson's "asthmatic/allergy disability." Am. Compl. ¶

184.  Mr. Richardson alleges here, as he does elsewhere, that this "violated [his] clearly

established *constitutional rights* to a reasonable accommodation, under Title I of the [ADA] *and

the Civil Rights Act of 1964*," 42 U.S.C. 2000e *et seq.*  Am. Compl. ¶ 187 (emphasis added).

Neither the Civil Rights Act nor the Constitution requires accommodations for disabled persons.

*Miller v. Clinton*, 687 F.3d 1332, 1339 & n.6 (D.C. Cir. 2012) (citing *Bd. of Trs. of the Univ. of

Ala. v. Garrett*, 531 U.S. 356, 367 (2001)).  The Court will construe Count I as claiming a

violation of the ADA only.

Count II alleges "Disability Discrimination," also due to Mr. Richardson's "asthmatic/allergy disability." *Id.* ¶ 191.  Again, Mr. Richardson conflates statutes and adds constitutional flavoring. *Id.* ¶ 190 ("I allege that I am a 'qualified individual,' with a recorded disability, protected under Title I of the Americans with Disabilities Act of 1990 and the Civil Rights Acts of 1964."); *id.* ¶ 198 ("Defendants . . . violated my clearly established constitutional rights under Title I of the Americans with Disabilities Act of 1990.").  Neither of the cited statutes, nor the Constitution, prohibits disability-based discrimination against federal employees; rather, "the Rehabilitation Act [of 1973, 29 U.S.C. § 791] is the exclusive remedy for federal employees alleging disability discrimination." *Welsh v. Hagler*, 83 F. Supp. 3d 212, 222 (D.D.C. 2015) (collecting cases).  The Court will construe Count II as alleging disability discrimination under the Rehabilitation Act, an allegation that Defendants do not move to dismiss. *See* Mot. to Dismiss [Dkt. 17] (Mot.) at 1.[4]

Count III alleges "Wrongful Termination" insofar as Mr. Richardson's termination on June 7, 2010 was discriminatory and the Board's stated reasons were pretextual. Mr. Richardson alleges that instead of being terminated "due to a breach of security," he was terminated because of his medical condition. Am. Compl. ¶ 207.  In his opposition memorandum, Mr. Richardson alleges that he "was denied a promotion opportunity." Opp'n at 2. Count III also contains the legally distinct allegation that Defendants "intentionally and maliciously remov[ed] official medical documents from [Mr. Richardson's] LEU file." Am.

---

[4] By "the Civil Rights Act of 1964," Am. Compl. ¶ 190, Mr. Richardson presumably refers to Title VII, 42 U.S.C. § 2000e *et seq.*  Because he never claims membership in any class protected by Title VII, nor alleges discrimination on the basis thereof, the Court will disregard Mr. Richardson's invocation of Title VII as misplaced.

Compl. ¶ 212.  Mr. Richardson's opposition argues that this action violated both the

Rehabilitation Act and the Privacy Act of 1974, 5 U.S.C. § 552a.  Opp'n at 5 ("The

confidentiality and protection of my disability medical documents are protected by the

Rehabilitation Act of 1973 . . . and the Privacy Act of 1974 codified 5 U.S.C. § 552a.")[5]; *see*

*also, e.g.*, Am. Comp. ¶ 1b (". . . official medical call-off documents had been intentionally

removed (5 U.S.C. §§ 552a and 2302) from my LEU file by co-Defendants.").

   Count IV alleges defamation of character, a tort at common law.  Am. Compl.

¶¶ 214-23.  It is alleged that Defendants' lies about the number of "unexcused call-offs" Mr.

Richardson had, *id.* ¶ 218, and lies about whether he turned in required medical documents, *id.* ¶

221, caused "irreparable and permanent damage, to both [Mr. Richardson's] professional and

personal characters," *id.* ¶ 215.

   Embedded within Count IV are sub-allegations of "telephone spoofing and

vehicle vandalism," *id.* ¶¶ 224-34 and "prohibited personnel practices under 5 U.S.C. §§ 552a

and 2302," *id.* ¶¶ 235-40.  Defendant Billy Sauls, former LEU Chief, is alleged to have

---

[5] *See also* Opp'n at 5 ("The Rehabilitation Act of 1973 requires federal agencies that obtain medical information about applicants and employees to put this information on separate forms and in separate medical files, and treat it as a 'confidential medical record.'") (citing 29 C.F.R. §§ 1630.14(b)(l), (c)(l), and (d)(l)).  Each of those provisions requires that "Information obtained [there]under  . . . shall be collected and maintained on separate forms and in separate medical files and be treated as a confidential medical record."  *E.g.*, 29 C.F.R. § 1630.14(b)(1).  Each provision also provides the following exceptions:

> (i) Supervisors and managers may be informed regarding necessary restrictions on the work or duties of the employee and necessary accommodations;
> (ii) First aid and safety personnel may be informed, when appropriate, if the disability might require emergency treatment; and
> (iii) Government officials investigating compliance with this part shall be provided relevant information on request.

*E.g.*, *id.* § 1630.14(c)(1).

"knowingly and willingly provided an official law enforcement Agency with false information to evade an investigation while providing slanderous statements" about Mr. Richardson. *Id.* ¶ 226. It is also alleged that Defendant Albert Pleasant, LEU Senior Special Agent, "willingly and intentionally defamed [Mr. Richardson's] character to gain access to [his] cell phone records, by claiming that [Mr. Richardson] was involved in a spoofing scandal against the Board." *Id.* ¶ 230. Defendant Pleasant is also alleged to have acted under color of state law, "accessing [Richardson's] cell phone records with malicious intent" in violation of the Fourth Amendment. *Id.* ¶ 231. Defendant Pleasant allegedly further engaged in "entrapment and deception techniques" in violation of Mr. Richardson's Fifth Amendment rights. *Id.* ¶ 233. Defendant Kevin May, Employee Relations Specialist, is alleged to have engaged in the "prohibited personnel practice[]" of knowingly removing certain documents from Mr. Richardson's personnel file: a separation letter; the denial of an appeal; and an investigative affidavit. *Id.* ¶¶ 235-36. All Defendants are accused of "knowingly, willingly, and with malicious disregard for established laws, falsified testimony under penalty of perjury, while knowingly defaming [Mr. Richardson's] character, with intentional malice, to support their cause that resulted in [his] termination from Board employment." *Id.* ¶ 238. Defendants' actions allegedly resulted in Mr. Richardson's termination and in a criminal investigation of him, which impaired his subsequent job search. Ultimately Mr. Richardson "had to seek emergency assistance for food and shelter." *Id.* ¶ 239.

Count V alleges "Whistleblower Retaliation," in violation of 5 U.S.C. § 2302(b)(8). *Id.* ¶¶ 241-54. Mr. Richardson asserts that he made a protected disclosure of prohibited personnel activity to Defendants Dublin (LEU Lieutenant), Jones (LEU Deputy Chief), Sauls (LEU Chief), and May (Employee Relations Specialist). As a result, Mr.

Richardson was "forced to work 3 different shifts weekly, until [his] June 7, 2010 termination." *Id.* ¶ 243. Defendants Bakale (LEU Sergeant) and Coble (Administrative Lieutenant) allegedly retaliated further by removing medical documents from Mr. Richardson's file so that he could be terminated before his probationary period was over. *Id.* Mr. Richardson claims that he also suffered retaliation through "intensified personnel actions," such as denial of promotion, denial of accommodation, and derogatory name calling. *Id.* ¶ 253.

Count VI alleges "Disparate Treatment" and "Disparate Impact," which the Court will construe as duplicative of Mr. Richardson's Rehabilitation Act claim, his ADA claim, or both. *See id.* ¶¶ 255-69. Mr. Richardson does not cite the statutory or common-law basis for Count VI. He alleges membership in a "protected group" and that he was "treated less favorably" than non-members by Defendants, who "displayed discriminatory intent." *Id.* ¶¶ 256, 257. He alleges "workplace harassment" and the denial of a "reasonable accommodation." *Id.* ¶ 257. These allegations sound in employment discrimination, which is already alleged in Counts II and I. The Court sees no allegation in Count VI that is not alleged elsewhere.

Counts VII and VIII allege "Mental Anguish and Psychological Trauma" and "Undue Pain and Suffering (Severe Economic Hardship)," respectively, which the Court construes as some combination of intentional or negligent infliction of emotional distress—both torts at common law. Mr. Richardson claims "mental distress due to embarrassment and repeated episodes of intentional harassment, and humiliation." *Id.* ¶ 271. He "wake[s] up at night in cold sweats . . . constantly look[s] out of [his] windows to make sure that [he is] safe from the Defendants," and now has "a fear of all law enforcement officials because of the harm caused to me by the defendants." *Id.* ¶ 272. Economically, Mr. Richardson is "on the verge of homelessness and ha[s] had to seek financial assistance from various agencies for food and

shelter." *Id.* ¶ 275.  Defendants "continue to blackball [him] from employment," causing

"prospective employers [to] deny [him] employment opportunities as a result." *Id.*

In the end, Mr. Richardson sues Defendants for (1) common-law torts; (2)

constitutional torts; (3) violating the ADA; (4) violating the Privacy Act; and (5) violating the

Rehabilitation Act.  Because he does not state whether his claims run against the Agency[6] or the

seven individual Defendants, the Court will assume that Mr. Richardson advances all five claims

against all eight Defendants.

## II.  LEGAL STANDARD

A motion to dismiss for failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6) challenges the adequacy of a complaint on its face.  Fed. R. Civ. P. 12(b)(6).

A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the

grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal

citations omitted).  Although a complaint does not need detailed factual allegations, a plaintiff's

obligation to provide the grounds of his entitlement to relief "requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.  To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

to state a claim for relief that is "plausible on its face." *Id*. at 570.  A court must treat the

complaint's factual allegations as true, "even if doubtful in fact." *Id.* at 555.  But a court need

not accept as true legal conclusions set forth in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).  In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the

---

[6] Mr. Richardson sues Janet Yellen "in [her] official capacity" as Chair of the Federal Reserve's Board of Governors.  Am. Compl. at 1.  That is the functional equivalent of suing the agency itself. *See Jones v. Ottenberg's Bakers, Inc.*, 999 F. Supp. 2d 185, 190 (D.D.C. 2013); *Brown v. Corr. Corp. of Am.*, 603 F. Supp. 2d 73, 78 (D.D.C. 2009); *Hardy v. District of Columbia*, 601 F. Supp. 2d 182, 187 (D.D.C. 2009); *Jenkins v. Jackson*, 538 F. Supp. 2d 31, 33 (D.D.C. 2008).

complaint, documents attached to the complaint as exhibits or incorporated by reference, and

matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d

1052, 1059 (D.C. Cir. 2007).

## III.  ANALYSIS

Defendants do not move to dismiss Mr. Richardson's "disability discrimination

claims arising under the Rehabilitation Act of 1973."  Mot. at 1-2.  As noted above, Mr.

Richardson claims that the Rehabilitation Act was violated both by Defendant's disability-based

discrimination and by their intentional removal of his medical records.  Because Defendants do

not parse those separate alleged violations, all claims by Mr. Richardson under the Rehabilitation

Act shall proceed.  For the following reasons, Mr. Richardson's other claims will be dismissed.

### A.  Mr. Richardson's Tort Claims

#### 1.  Claims and defendants

The analysis must begin by orienting on the proper claims and Defendants.  While

neither the Amended Complaint nor Mr. Richardson's opposition memorandum is pellucidly

clear, the Court is confident of what wrongs, and against whom, Mr. Richardson is alleging.

##### a.  Common-law tort claims

Mr. Richardson maintains in his Opposition that the "claims presented in the

'Amended Complaint' are all associated with claims of disability discrimination in employment

and intentional misconduct, *not* tort claims under the [Federal Tort Claims Act] FTCA."  Opp'n

at 7 (emphasis in original).  His argument is hard to square with the Amended Complaint itself,

which alleges "Defamation of Character" (Count IV, Am. Compl. ¶¶ 214-40); "Mental Anguish

and Psychological Trauma" (Count VII, *id.* ¶¶ 270-73); and "Undue Pain and Suffering" (Count

VIII, *id.* ¶¶ 274-78), all of which are tort claims.

As a layman, Mr. Richardson may not understand that all of these allegations

sound in tort.  Defamation is indisputably a tort.  *See F.A.A. v. Cooper*, 132 S. Ct. 1441, 1452

(2012); *Snyder v. Phelps*, 562 U.S. 443, 450 (2011).  So is the intentional or negligent infliction

of emotional distress.  *Doe v. Exxon Mobil Corp.*, 473 F.3d 345, 346 (D.C. Cir. 2007); *Doe v.

Bernabei & Wachtel, PLLC*, 116 A.3d 1262, 1268-69 (D.C. 2015).  It is also well established

that common-law tort claims may not be pursued against the United States or its agencies absent

a waiver of sovereign immunity.  *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *Block v. North

Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983).  The only waiver of

sovereign immunity for torts by government employees lies in the FTCA.  *Meshal v.

Higgenbotham*, 804 F.3d 417, 428 (D.C. Cir. 2015).[7]  Because several of Mr. Richardson's

claims allege torts, he is bound by the FTCA's timing and procedural requirements.

        Mr. Richardson argues that he is suing individuals, not the government.  But

where the sued individuals are government employees, the Attorney General can substitute the

United States as defendant when "the defendant employee[s] w[ere] acting within the scope of

[their] office or employment at the time of the incident out of which the claim arose."  28 U.S.C.

§ 2679(d)(1).  The Attorney General has filed such a certification here.  *See* Mot., Ex. A [Dkt.

17-1] (Certification).  Although a scope-of-employment certification is reviewable by the Court

upon a plaintiff's objection, *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 420 (1995), Mr.

Richardson has not suggested any disagreement with the Attorney General's certification.[8]  This

---

[7] This limitation does not apply to 'constitutional torts,' as addressed below.  *Id.* (citing 27
U.S.C. § 2679(b)(2)(A)).

[8] Far from objecting, Mr. Richardson embraces the certification:

> Normally the burden of establishing if an employee was acting within the scope of
> his office would rest with the plaintiff.  I am relieved of this burden in light of
> certification having been provided by Counsels' that each Defendant in his
> individual capacity was, in fact, acting within the scope of his office.

case therefore "shall be deemed an action against the United States."  28 U.S.C. § 2679(d)(1).

Remaining are Mr. Richardson's allegations against Janet Yellen, sued in her official capacity as Chair of the Federal Reserve's Board of Governors.  Under the FTCA, the complaint must name the United States, not one of its agencies.  *Meyer*, 510 U.S. at 476.  Mr. Richardson's common-law tort claims against Ms. Yellen must also be dismissed.

In sum, Mr. Richardson cannot pursue his tort claims against the individually named Defendants or against the Federal Reserve through its Chair.  He must instead make out a claim against the United States under the FTCA.

### b.  Constitutional tort claims

Mr. Richardson appears to allege constitutional violations against certain Defendants.  *E.g.*, Am. Compl. ¶ 187 ("Defendants . . . violated my clearly established *constitutional rights* to a reasonable accommodation, under Title I of the Americans with Disabilities Act and the Civil Rights Act of 1964.") (emphasis added); *id.* ¶ 1(h) ("I allege that, Defendant Pleasant, accessed, examined, and displayed the contents of, my cell phone records, from April of year 2010 to January of year 2011 *(Fourth Amendment, Unreasonable Searches and Seizures)*[.]") (emphasis in original).

To the extent brought against the United States or one of its agencies, these claims fail as a matter of law.  A plaintiff cannot seek money damages in tort from the United States because "the FTCA does not waive sovereign immunity for constitutional torts."  *Epps v. U.S. Atty. Gen.*, 575 F. Supp. 2d 232, 238 (D.D.C. 2008) (citing *Meyer*, 510 U.S. at 477-78; *Clark v. Library of Congress*, 750 F.2d 89, 102-104 (D.C. Cir. 1984)).

The conclusion here is thus the opposite from the common-law torts.  Mr.

---

Opp'n at 4.

Richardson cannot proceed against the United States, but must instead state a claim against the individual defendants.

*        *        *

What remains to assess, therefore, is (1) whether Mr. Richardson has adequately pleaded a claim against the United States under the FTCA; and (2) whether Mr. Richardson has adequately pleaded a constitutional tort claim against any of the individual Defendants.

### 2.  Mr. Richardson fails to state an FTCA claim against the United States

The United States' waiver of sovereign immunity in the FTCA is limited in several respects.  First and foremost, it requires a putative plaintiff to exhaust all administrative remedies before filing suit in court.  28 U.S.C. § 2675(a); 28 C.F.R. § 14.2(a).  Second, the United States does not waive immunity as to several kinds of torts, including "libel [and] slander."  28 U.S.C. § 2680(h).

Mr. Richardson never exhausted FTCA claims at the administrative level.  In fact, he admits it: "I have not reported or submitted, to the Board, any claim of personal injury . . . . In this regard, the FTCA has no jurisdiction in the instant matter."  Opp'n at 6.  Mr. Richardson is confused about the FTCA's operation; he argues that because he did *not* exhaust his administrative FTCA remedies, this *cannot* be a suit under the FTCA (and Defendants' arguments are therefore inapposite).  His misunderstanding of the law has resulted in an honest concession that unravels his case: it is precisely *because* he did not exhaust his remedies that his FTCA claims against the United States must be dismissed.  And because the FTCA is the exclusive remedy for torts committed by the United States or its employees, Mr. Richardson is left without a common-law tort claim.

Alternatively, Mr. Richardson's defamation claim (Count IV) would nonetheless

13

fail because immunity from libel or slander suits was not waived by the United States in the

FTCA.  *See Thomas v. Principi*, 394 F.3d 970, 973, 976 (D.C. Cir. 2005) (affirming the

dismissal of defamation claims because they are not actionable under the FTCA); *Loumiet v.*

*United States*, 106 F. Supp. 3d 219, 222 (D.D.C. 2015) (equating defamation with libel and

slander for FTCA purposes and dismissing defamation claims for that reason).

### 3. Mr. Richardson fails to state a constitutional tort claim against the individual Defendants

To the extent that Mr. Richardson alleges constitutional torts against individual

defendants, the claims are untimely.  So-called *Bivens* claims are subject to, at best, a three-year

statute of limitations under D.C. Code §§ 12-301(4), (8).[9]  "When a federal action contains no

statute of limitations, courts will ordinarily look to analogous provisions in state law as a source

of a federal limitations period."  *Hampton v. Comey*, No. 14-cv-1607 (ABJ), 2016 WL 471277,

at *13 (D.D.C. Feb. 8, 2016) (quoting *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1114 (D.C.

Cir. 1985)).  In the context of a *Bivens* action claiming the deprivation of constitutional rights,

the D.C. Circuit has instructed that D.C. Code § 12-301 provides the relevant limitations periods.

*See Zhao v. Unknown Agent of CIA*, 411 F. App'x 336, 336-37 (D.C. Cir. 2010) (finding *Bivens*

claims "barred by the applicable statute of limitations" and citing D.C. Code § 12-301); *see also*

*Doe*, 753 F.2d at 1114-15 (applying one-year statute of limitations for defamation actions set out

in D.C. Code § 12-301(4) to *Bivens* claim based on allegations of dissemination of false and

defamatory statements).  D.C. Code Section 12-301(8) provides a three-year limitations period

for actions "for which a limitation is not otherwise specially prescribed."  Three years is

---

[9] Under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), plaintiffs can allege constitutional torts directly against individual federal employees.  The doctrine is limited in several other respects, none of which needs elaboration here because Mr. Richardson's claims are untimely.

therefore the *longest* period that could apply to Mr. Richardson's *Bivens* claims.

The alleged constitutional trespasses took place between late 2009 and 2011. *See* Am. Compl. ¶¶ 5, 7-31, 144. The Amended Complaint—which was the first to name any individual defendant—was filed on March 20, 2015, which was more than three years later. *See* Am. Compl. [Dkt. 8].[10] The claims are therefore untimely on their face.

Mr. Richardson's counterarguments are unavailing. He invokes the residual federal statute of limitations, 28 U.S.C. § 2401(a), but the D.C. Circuit has held that "[w]hen a federal action contains no statute of limitations, courts will ordinarily look to analogous provisions in state law as a source of a federal limitations period." *Doe*, 753 F.2d at 1114. *Cf. Weaver v. Bratt*, 421 F. Supp. 2d 25, 37 (D.D.C. 2006) (same). Mr. Richardson is also incorrect that his EEOC proceedings tolled the statute of limitations on his *Bivens* claims. Instead, "[t]he Supreme Court has held that the statute of limitations continues to run on a claim that requires no administrative exhaustion even while the plaintiff pursues administrative remedies on a separate claim that requires exhaustion." *Proctor v. District of Columbia*, 74 F. Supp. 3d 436, 458 n.11 (D.D.C. 2014) (citing *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 465-66 (1975)). Mr. Richardson's common-law tort claims required exhaustion; his constitutional tort claims did not. The latter are not tolled while he exhausts the former.

Because they are untimely even on the facts alleged by Mr. Richardson, his *Bivens* claims against the individual Defendants will be dismissed.

## B. Mr. Richardson's Statutory Claims

### 1. The Whistleblower Protection Act claim fails as a matter of law

---

[10] The original Complaint, Dkt. 1, would have suffered the same fate; it was not filed until October 8, 2014.

Count V of the Amended Complaint alleges a violation of the federal Whistleblower Protection Act, 5 U.S.C. § 2302(b)(8) (WPA).  That Act does not apply to all federal agencies, however.  The Federal Reserve Act provides that "employment, compensation, leave and expenses" of Federal Reserve employees "shall be governed *solely* by the provisions of this chapter."  12 U.S.C. § 244 (emphasis added).  The Merit Systems Protection Board (MSPB) has held that this specific provision trumps the more general provisions in the Whistleblower Protection Act (WPA) and, thus, that the Board is not covered by that statute.  *Carney v. Bd. of Governors of Fed. Reserve Sys.*, No. DC-1221-94-0279-W-1, 1994 WL 539299 (M.S.P.B. Sept. 30, 1994).  No subsequent MSPB decision appears to have followed suit and Defendants do not offer—nor can the Court find—any federal case law in support of the proposition.

Whether the Board is exempt from the Whistleblower Protection Act is ultimately immaterial because claims under that statute must first be brought to the Office of Special Counsel (OSC).  Mr. Richardson alleges that "[OSC] was hereby [sic] notified of all Defendants [sic] behaviors using forms OSC 11 an [sic] OSC 12," Am. Compl. ¶ 252, but he does not show that he exhausted the administrative process.  As the D.C. Circuit has explained:

> Under the procedures set forth in Title 5 of the U.S. Code, an employee who believes she is the victim of an unlawful reprisal must first bring her claim to the OSC, which investigates the complaint. *Id.* § 1214; *Weber v. United States*, 209 F.3d 756, 758 (D.C. Cir. 2000) (describing whistleblower protection procedures under Title 5).  If the OSC finds that there was a prohibited personnel action as defined by § 2302, it reports its findings to the MSPB, and it can petition the MSPB on the employee's behalf.  *Weber*, 209 F.3d at 758.  If the OSC finds no agency wrongdoing, then the employee herself may bring an action before the MSPB.  5 U.S.C. §§ 1221; 1214(a)(3); *Weber*, 209 F.3d at 758.  The MSPB's decision is appealable to the Federal Circuit. 5 U.S.C. § 7703; *Weber*, 209 F.3d at 758.  *Under no circumstances does the WPA grant the District Court jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance.*

*See Stella v. Mineta*, 284 F.3d 135, 142 (D.C. Cir. 2002) (emphasis added).  Because the Board

may be exempted from the WPA altogether, and because Mr. Richardson's claim was not

exhausted, Count V will be dismissed.

Even the most liberal construction of Mr. Richardson's claim does not save it.

The Board *is* covered by another whistleblower-protection statute, 12 U.S.C. § 1831j, and the

Court could construe Mr. Richardson's claim as being brought under that provision.  But such

claims must be brought within two years.  *See id.* § 1831j(b).  The latest possible date of

retaliation by the Board would be June 7, 2010, when it terminated Mr. Richardson, *see* Am.

Compl. ¶ 5; this case was not brought until October 8, 2014.  *See generally* Compl. [Dkt. 1].

Thus, the Board-specific whistleblower law would not save the Complaint.

### 2.  The Americans with Disabilities Act claim fails as a matter of law

Count I alleges a violation of Title I of the ADA on the basis that the Board failed

to accommodate Mr. Richardson's "asthmatic/allergy disability."  Am. Compl. ¶ 184.  More

specifically, he alleges that he is a "qualified individual" under 42 U.S.C. § 12111(8) and that the

Board is a "covered entity" under 42 U.S.C. § 12111(2).  Mr. Richardson is incorrect.  "[T]he

ADA, enacted in 1990, explicitly excludes the federal government from coverage."  *Pinkerton v.*

*Spellings*, 529 F.3d 513, 517 & n.18 (5th Cir. 2008) (citing 42 U.S.C. § 12111(5)(B)); *see also*

*Zimmerman v. Oregon Dep't of Justice*, 170 F.3d 1169, 1172 (9th Cir. 1999) ("Although

Congress generally included governmental employers in Title I, it exempted the federal

government from that Title.") (citing the same provision).  While Mr. Richardson may pursue his

disability-discrimination claims under the Rehabilitation Act, which expressly borrows the

ADA's standards, he may not proceed directly under the ADA.  Count I must be dismissed.

### 3.  The Privacy Act claim fails as a matter of law

Mr. Richardson alludes several times to the Privacy Act of 1974.  *See* Opp'n at 5

("The confidentiality and protection of my disability medical documents are protected by the

Rehabilitation Act of 1973 . . . and the Privacy Act of 1974 codified 5 U.S.C. § 552a."); Am. Comp. ¶ 1b (". . . official medical call-off documents had been intentionally removed (5 U.S.C. §§ 552a[]) from my LEU file by co-Defendants."). But the Privacy Act's two-year statute of limitations bars any claim in this suit, which was filed on October 8, 2014. *See* 5 U.S.C. § 552a(g)(5); Compl. [Dkt. 1]. Mr. Richardson alleges no Privacy Act violation as recent as October 2012, and any Privacy Act claim must therefore be dismissed.

### G. Additional Matters

#### 1. Mr. Richardson cannot state disability discrimination claims against anyone but Defendant Yellen, in her official capacity

Mr. Richardson alleges disability discrimination, a claim that need not be explicated here because Defendants do not move to dismiss it. Mot. at 1 n.1. The Court notes, however, that such a claim may only be brought against Ms. Yellen in her official capacity. It is well known that "the Rehabilitation Act is the exclusive remedy for federal employees alleging disability discrimination." *Welsh v. Hagler*, 83 F. Supp. 3d 212, 222 (D.D.C. 2015) (citing *Paegle v. Dep't of Interior*, 813 F. Supp. 61, 66-67 (D.D.C. 1993); *Shirey v. Devine*, 670 F.2d 1188, 1191 n.7 (D.C. Cir. 1982)). Equally limited are the possible defendants under the Rehabilitation Act: only the heads of federal agencies in their official capacity may be sued, not their individual employees. *Norris v. Salazar*, 885 F. Supp. 2d 402, 414 (D.D.C. 2012) (citing *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 81 (D.D.C. 2009) ("Since the Rehabilitation Act draws from the procedures of Title VII, the only proper defendant is the head of the department, agency, or unit.")); *see also Di Lella v. Univ. of D.C. David A. Clarke Sch. of Law*, 570 F. Supp. 2d 1, 7 n.8 (D.D.C. 2008) ("[T]here is no individual liability under the ADA or the Rehabilitation Act.") (collecting cases).

The Court must dismiss Mr. Richardson's disability-discrimination claims to the

extent they are brought against any Defendant other than Ms. Yellen, sued in her official

capacity as the Chair of the Federal Reserve Board of Governors.

### 2.  Mr. Richardson's claims based on false testimony fail

Mr. Richardson bases some of his claims on the sworn testimony of individual

Defendants.  Indeed, he devotes the bulk of his Amended Complaint, ¶¶ 55-144, to recounting

that testimony.  Although these claims have been converted into claims against the United States,

they fail because witnesses generally enjoy absolute immunity from such claims.  *See Briscoe v.*

*LaHue*, 460 U.S. 325, 345 (1983).  This immunity attaches to testimony given by affidavit or

deposition.  *E.g.*, *Partington v. Norris*, 28 F.3d 107 (9th Cir. 1994) (citing *Briscoe*, 460 U.S.

325).  And importantly for these purposes, it attaches to administrative proceedings.  *E.g.*, *Pratts*

*v. Sujan*, 176 F.3d 484 (9th Cir. 1999) (citing *Briscoe*, 460 U.S. at 334).

Because it is unclear how, and to what extent, the allegedly false testimony

undergirds Mr. Richardson's various claims, it helps here to point out that the witnesses are

absolutely immune from suit for any of it.

### IV.  CONCLUSION

Defendants' motion to dismiss will be granted *in toto*.  The challenged claims fail

for various legal reasons explained above.  Mr. Richardson's remaining claims under the

Rehabilitation Act must be brought against Defendant Yellen in her official capacity.  Those

claims, so construed, will proceed to discovery.

A memorializing Order accompanies this Opinion.


Date: March 8, 2016                               _____/s/_____
                                                  ROSEMARY M. COLLYER
                                                  United States District Judge